**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| MARY SHARP,<br><br>Plaintiff,<br><br>v.<br><br>SLR SENIOR INVESTMENT CORP., MICHAEL S. GROSS, BRUCE SPOHLER, STEVEN HOCHBERG, DAVID S. WACHTER, and LEONARD A. POTTER,<br><br>Defendants. | Civil Action No.<br><br>**COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Mary Sharp ("Plaintiff") by and through her undersigned attorneys, brings this action on behalf of herself, and alleges the following based upon personal knowledge as to those allegations concerning Plaintiff and, as to all other matters, upon the investigation of counsel, which includes, without limitation: (a) review and analysis of public filings made by SLR Senior Investment Corp. ("SUNS" or the "Company") and other related parties and non-parties with the United States Securities and Exchange Commission ("SEC"); (b) review and analysis of press releases and other publications disseminated by certain of the Defendants (defined below) and other related non-parties; (c) review of news articles, shareholder communications, and postings on the Company's website concerning the Company's public statements; and (d) review of other publicly available information concerning SUNS and the Defendants.

## SUMMARY OF THE ACTION

1. This is an action brought by Plaintiff against SUNS and the Company's Board of Directors (the "Board" or the "Individual Defendants") for their violations of Section 14(a) and 20(a) of the Securities Exchange Act of 1934, 15 U.S.C. §§ 78n(a), 78t(a), and SEC Rule 14a-9, 17 C.F.R. 240.14a-9, in connection with the proposed transaction (the "Proposed Transaction") between the Company and SLR Investment Corp. ("SLRC").

2. On December 1, 2021, the Company entered into an Agreement and Plan of Merger (the "Merger Agreement") with SLRC, Solstice Merger Sub, Inc., a wholly-owned subsidiary of SLRC ("Merger Sub"), and SLR Capital Partners, LLC ("SCP"), investment adviser to both SLRC and SUNS. Pursuant to the terms of the Merger Agreement, Merger Sub will merge with and into SUNS, with SUNS surviving the merger as a wholly owned subsidiary of SLRC. As a consequence of the merger, the Company's shareholders will receive 0.7763 shares of SLRC common stock for each share of Company common stock they own (the "Merger Consideration").

3. On February 3, 2022, in order to convince the Company's shareholders to vote in favor of the Proposed Transaction, the Board authorized the filing of a materially incomplete and misleading proxy statement with the SEC (the "Proxy Statement"), in violation of Sections 14(a) and 20(a) of the Exchange Act.

4. For these reasons, and as set forth in detail herein, Plaintiff asserts claims against SUNS and the Board for violations of Sections 14(a) and 20(a) of the Exchange Act and Rule 14a-9. Plaintiff seeks to enjoin Defendants from taking any steps to consummate the Proposed Transaction unless and until the material information discussed below is disclosed to SUNS shareholders before the vote on the Proposed Transaction or, in the event the Proposed

Transaction is consummated, recover damages resulting from the Defendants' violations of the Exchange Act.

**JURISDICTION AND VENUE**

5. This Court has subject matter jurisdiction over all claims asserted herein pursuant to Section 27 of the Exchange Act, 15 U.S.C § 78aa, and 28 U.S.C. § 1331, as Plaintiff alleges violations of Sections 14(a) and 20(a) of the Exchange Act.

6. This Court has personal jurisdiction over all of the Defendants because each is either a corporation that conducts business in, solicits shareholders in, and/or maintains operations within, this District, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District so as to make the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

7. Venue is proper under 28 U.S.C. § 1391 because a substantial portion of the transactions and wrongs complained of herein occurred in this District.

**THE PARTIES**

8. Plaintiff is, and has been at all times relevant hereto, the owner of SUNS shares.

9. Defendant SUNS is incorporated under the laws of Maryland and has its principal executive offices located at 500 Park Avenue, New York, New York 10022. The Company's common stock trades on the NASDAQ under the symbol "SUNS."

10. Defendant Michael S. Gross ("Gross") is and has been the President, Co-Chief Executive Officer ("Co-CEO"), and Chairman of the Board of SUNS at all times during the relevant time period.

11. Defendant Bruce Spohler ("Spohler") is and has been the Co-CEO and a director of SUNS at all times during the relevant time period.

12. Defendant Steven Hochberg ("Hochberg") is and has been a SUNS director at all times during the relevant time period.

13. Defendant David S. Wachter ("Wachter") is and has been a SUNS director at all times during the relevant time period.

14. Defendant Leonard A. Potter ("Potter") is and has been a SUNS director at all times during the relevant time period.

15. Defendants Gross, Spohler, Hochberg, Wachter, and Potter are collectively referred to herein as the "Individual Defendants."

16. The Individual Defendants, along with Defendant SUNS, are collectively referred to herein as "Defendants."

## SUBSTANTIVE ALLEGATIONS

### Background of the Company

17. SUNS is a closed-end investment company that has elected to be regulated as a business development company under the Investment Company Act of 1940. A specialty finance company with expertise in several niche markets, SUNS primarily invests directly and indirectly in leveraged, U.S. middle market companies primarily in the form of cash flow first lien senior secured debt instruments and asset-based loans including senior secured loans collateralized on a first lien basis primarily by current assets.

### The Company Announces the Proposed Transaction

18. On December 1, 2021, the Company jointly issued a press release announcing the Proposed Transaction. The press release stated in part:

NEW YORK, Dec. 01, 2021 (GLOBE NEWSWIRE) -- SLR Investment Corp. (NASDAQ: SLRC) ("SLRC") and SLR Senior Investment Corp. (NASDAQ: SUNS) ("SUNS") today announced that they have entered into an agreement to merge together, with SLRC as the surviving company, subject to stockholder approval and customary closing conditions. The Boards of Directors of both SLRC and SUNS, on the recommendation of their special committees consisting only of the independent directors, have unanimously approved the transaction.

Under the terms of the proposed merger, SUNS shareholders will receive an amount of SLRC shares with a net asset value ("NAV") equal to the NAV of SUNS shares that they hold at the time of closing. The exchange ratio will be determined within forty-eight hours prior to the closing such that shares issued by SLRC to SUNS shareholders will result in an ownership split of the combined company based on the respective NAVs of each of SLRC and SUNS. For illustrative purposes, based on NAVs as of September 30, 2021 and including expected transaction costs and distributions, SLRC would issue approximately 0.7763 shares for each SUNS share outstanding, resulting in approximate pro forma ownership of 77.2% for current SLRC stockholders and 22.8% for current SUNS stockholders.

SLR Capital Partners, LLC ("SLR Capital Partners" or "we," "us," or "our") will continue to serve as the investment adviser of the combined company and all current SLRC officers and directors will remain in their current positions. Effective upon closing of the merger, SLR Capital Partners has voluntarily agreed to a 25 basis points reduction of the base management fee, resulting in a base management fee of 1.50% on gross assets up to 200% of SLRC's total net assets as of the immediately preceding quarter end. SLRC will retain the contractual annual base management fee payable by SLRC of 1.00% on gross assets that exceed 200% of SLRC's total net assets as of the immediately preceding quarter end.

The combined company will trade under the ticker symbol "SLRC" on the Nasdaq Global Select Market and currently expects to continue to pay a quarterly distribution of $0.41 per share to the combined company's shareholders. However, there can be no assurance that the combined company will pay quarterly distributions at this amount or in any amount, and all future distributions will be subject to the approval of the combined company's board of directors.

"Our announcement represents an important step to further drive value for the shareholders of SLRC and SUNS," said Michael Gross, Co-Chief Executive Officer of SLRC and SUNS. "We look forward to leveraging the benefits provided by the larger combined company which will operate with greater scale, portfolio diversity and financial flexibility."

Bruce Spohler, Co-Chief Executive Officer of SLRC and SUNS, said, "We believe the proposed merger of SUNS into SLRC will provide several immediate and long-term benefits to shareholders of both companies and will position us to continue to deliver strong risk-adjusted returns and investment performance for both groups of shareholders."

**Key Transaction Highlights**

- The merger is expected to be accretive to the net investment income of the combined company, reflecting anticipated operational synergies through the elimination of duplicative expenses, the 25 basis points voluntary reduction of SLRC's base management fee described above, and interest expense savings resulting from more efficient debt financing.
- The larger market capitalization following completion of the merger may result in greater secondary market trading liquidity and broader equity research coverage.
- The merger brings SLRC's and SUNS's niche commercial finance investment strategies into one entity, promoting further cross-collaboration and additional synergies, while providing both investor bases access to a broader and more diversified set of investment verticals with the potential to invest in larger portfolio companies.
- The combination of two known portfolios, with approximately 29% of the combined portfolio consisting of previously overlapping SLRC and SUNS investments, based on the portfolio fair values as of September 30, 2021, will help to facilitate a seamless portfolio integration.
- The combined portfolio will result in greater diversification through a larger portfolio and more individual borrowers.
- The combined company would have had over $2 billion of assets invested in more than 125 portfolio companies as of September 30, 2021. The combined investment portfolio would have been composed of approximately 65% senior secured loans and approximately 35% equity of which over 98% is invested in commercial finance companies which lend and/or lease on a senior secured first lien basis. Investments on non-accrual would have been low at 1.5% of the combined portfolio at fair value.
- Prior to the anticipated closing in the first half of 2022, the SLRC Board of Directors intends to declare its ordinary course $0.41 quarterly distribution for the first fiscal quarter of 2022. Also prior to the closing, the SUNS Board of Directors intends to declare and pay its ordinary course monthly distributions of $0.10 per month for the first fiscal quarter of 2022, including the March 2022 distribution, which will be declared and paid just prior to the anticipated closing of the transaction.

- We currently anticipate that SLRC's quarterly distribution will remain at $0.41 per share post-closing, which translates to a distribution increase for SUNS shareholders of approximately 6%, based on the illustrative conversion rate at 9/30. However, there can be no assurance that the combined company will pay quarterly distributions at this amount or in any amount, and all future distributions will be subject to the approval of the combined company's board of directors.

The transaction, which is intended to be treated as a tax-free reorganization, is subject to various approvals by SLRC and SUNS stockholders and other customary closing conditions. Assuming these conditions are satisfied, the transaction is expected to close in the first half of 2022.

Keefe, Bruyette & Woods, *A Stifel Company*, serves as financial advisor and Blank Rome LLP serves as the legal counsel to the special committee of SLRC. Houlihan Lokey Capital, Inc. serves as financial advisor and Dechert LLP serves as the legal counsel to the special committee of SUNS. Katten Muchin Rosenman LLP serves as the legal counsel to SLRC, SUNS and SLR Capital Partners.

**FALSE AND MISLEADING STATEMENTS**

**AND/OR MATERIAL OMISSIONS IN THE PROXY STATEMENT**

19. On February 3, 2022, the Company authorized the filing of the Proxy Statement with the SEC. The Proxy Statement recommends that the Company's shareholders vote in favor of the Proposed Transaction.

20. Defendants were obligated to carefully review the Proxy Statement prior to its filing with the SEC and dissemination to the Company's shareholders to ensure that it did not contain any material misrepresentations or omissions. However, the Proxy Statement misrepresents and/or omits material information that is necessary for the Company's shareholders to make informed decisions regarding whether to vote in favor of the Proposed Transaction, in violation of Sections 14(a) and 20(a) of the Exchange Act.

**Material False and Misleading Statements or Material**
**Misrepresentations or Omissions Regarding the Sales Process**

21. The Proxy Statement contains information concerning the background of the Proposed Transaction, but fails to disclose material information concerning such.

22. First, the Proxy Statement fails to disclose sufficient information concerning the number and nature of all confidentiality agreements entered into between the Company and any interested third party during the sales process, as well as whether any agreement contained "don't-ask, don't waive" or standstill provisions, and if so, the specific conditions, if any, under which such provisions would fall away or prevent parties from submitting a bid.

23. Disclosure of the above information is vital to provide investors with the complete mix of information necessary to make an informed decision when voting on the Proposed Transaction.

**Material False and Misleading Statements or Material**
**Misrepresentations or Omissions Regarding the Financial Opinions**

24. The Proxy Statement contains the financial analyses and opinion of Keefe, Bruyette & Woods, Inc. ("KBW") and Houlihan Lokey Capital, Inc. ("Houlihan Lokey") concerning the Proposed Transaction, but fails to provide material information concerning such.

25. With respect to KBW's *Selected Companies Analysis*, the Proxy Statement fails to disclose the individual multiples and metrics for each of the companies observed in the analysis.

26. With respect to KBW's *Selected Transactions Analysis* for the Company, the Proxy Statement fails to disclose the individual multiples and metrics for each of the transactions observed in the analysis.

27. With respect to KBW's *Dividend Discount Analysis of SUNS*, the Proxy Statement fails to disclose: (i) the inputs and assumptions underlying KBW's use of discount

rates ranging from 8.0% to 12.0%; (ii) the present value of the estimated future dividends of SLRC over the period from the Closing Date through December 31, 2025; (iii) SUNS implied terminal value as of December 31, 2025; (iv) the inputs and assumptions underlying KBW's use of a terminal multiple range of 0.90x to 1.10x to SUNS estimated NAV per share as of December 31, 2025; and (v) the inputs and assumptions underlying KBW's use of a terminal dividend yield range of 6.0% to 10.0%.

28. With respect to KBW's *Dividend Discount Analysis of SLRC*, the Proxy Statement fails to disclose: (i) the inputs and assumptions underlying KBW's use of discount rates ranging from 8.0% to 12.0%; (ii) the present value of the estimated future dividends of SLRC over the period from the Closing Date through December 31, 2025; (iii) SLRC's implied terminal value as of December 31, 2025; and (iv) the inputs and assumptions underlying KBW's use of a terminal multiple range of 0.90x to 1.10x to SUNS estimated NAV per share as of December 31, 2025; (v) the inputs and assumptions underlying KBW's use of a terminal dividend yield range of 7.0% to 11.0%.

29. With respect to Houlihan Lokey's *Selected Companies Analysis*, the Proxy Statement fails to disclose the individual multiples and metrics for each of the companies observed in the analysis.

30. With respect to Houlihan Lokey's *Selected Transactions Analysis* for the Company, the Proxy Statement fails to disclose the individual multiples and metrics for each of the transactions observed in the analysis.

31. With respect to Houlihan Lokey's *Dividend Discount Analysis of SUNS*, the Proxy Statement fails to disclose: (i) the inputs and assumptions underlying Houlihan Lokey's use of a range of terminal value multiples of 0.90x to 1.00x to SUNS's estimated 2025E Net

Asset Value; (ii) the inputs and assumptions underlying Houlihan Lokey's use of discount rates ranging from 7.0% to 9.0% with respect to SUNS; (iii) the inputs and assumptions underlying Houlihan Lokey's use of a range of terminal value multiples of 0.90x to 1.00x to SLRC's estimated 2025E Net Asset Value; (ii) the inputs and assumptions underlying Houlihan Lokey's use of discount rates ranging from 6.0% to 8.0% with respect to SLRC.

32. When a banker's endorsement of the fairness of a transaction is touted to shareholders, the valuation methods used to arrive at that opinion as well as the key inputs and range of ultimate values generated by those analyses must also be fairly disclosed. Moreover, the disclosure of projected financial information is material because it provides shareholders with a basis to project the future financial performance of a company and allows shareholders to better understand the financial analyses performed by the Company's financial advisor in support of its fairness opinion.

33. Without the above described information, the Company's shareholders are unable to cast a fully informed vote on the Proposed Transactions. Accordingly, in order to provide shareholders with a complete mix of information, the omitted information described above should be disclosed.

**COUNT I**

**(Against All Defendants for Violations of Section 14(a) of the Exchange Act and Rule 14a-9 Promulgated Thereunder)**

34. Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

35. Section 14(a)(1) of the Exchange Act makes it "unlawful for any person, by the use of the mails or by any means or instrumentality of interstate commerce or of any facility of a national securities exchange or otherwise, in contravention of such rules and regulations as the

Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors, to solicit or to permit the use of his name to solicit any proxy or consent or authorization in respect of any security (other than an exempted security) registered pursuant to section 78l of this title." 15 U.S.C. § 78n(a)(1).

36. Rule 14a-9, promulgated by the SEC pursuant to Section 14(a) of the Exchange Act, provides that communications with stockholders in a recommendation statement shall not contain "any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading." 17 C.F.R. § 240.14a-9.

37. Defendants have issued the Proxy Statement with the intention of soliciting shareholders support for the Proposed Transaction. Each of the Defendants reviewed and authorized the dissemination of the Proxy Statement, which fails to provide critical information regarding, among other things, the financial projections for the Company.

38. In so doing, Defendants made untrue statements of fact and/or omitted material facts necessary to make the statements made not misleading. Each of the Defendants, by virtue of their roles as officers and/or directors, were aware of the omitted information but failed to disclose such information, in violation of Section 14(a). The Defendants were therefore negligent, as they had reasonable grounds to believe material facts existed that were misstated or omitted from the Proxy Statement, but nonetheless failed to obtain and disclose such information to shareholders although they could have done so without extraordinary effort.

39. The Defendants knew or were negligent in not knowing that the Proxy Statement is materially misleading and omits material facts that are necessary to render it not misleading.

The Defendants undoubtedly reviewed and relied upon the omitted information identified above in connection with their decision to approve and recommend the Proposed Transaction.

40. The Defendants knew or were negligent in not knowing that the material information identified above has been omitted from the Proxy Statement, rendering the sections of the Proxy Statement identified above to be materially incomplete and misleading. Indeed, the Defendants were required to be particularly attentive to the procedures followed in preparing the Proxy Statement and review it carefully before it was disseminated, to corroborate that there are no material misstatements or omissions.

41. The Defendants were, at the very least, negligent in preparing and reviewing the Proxy Statement. The preparation of a Proxy Statement by corporate insiders containing materially false or misleading statements or omitting a material fact constitutes negligence. The Defendants were negligent in choosing to omit material information from the Proxy Statement or failing to notice the material omissions in the Proxy Statement upon reviewing it, which they were required to do carefully as the Company's directors. Indeed, the Defendants were intricately involved in the process leading up to the signing of the Merger Agreement and the preparation of the Company's financial projections.

42. The misrepresentations and omissions in the Proxy Statement are material to Plaintiff, who will be deprived of his right to cast an informed vote if such misrepresentations and omissions are not corrected prior to the vote on the Proposed Transaction.

43. Plaintiff has no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

**COUNT II**

**(Against the Individual Defendants for Violations of Section 20(a) of the Exchange Act)**

44. Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

45. The Individual Defendants acted as controlling persons of SUNS within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their positions as officers and/or directors of SUNS, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the incomplete and misleading statements contained in the Proxy Statement filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements that Plaintiff contends are materially incomplete and misleading.

46. Each of the Individual Defendants was provided with, or had unlimited access to, copies of the Proxy Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

47. In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the Exchange Act violations alleged herein, and exercised the same. The Proxy Statement at issue contains the unanimous recommendation of each of the Individual Defendants to approve the Proposed Transaction. They were thus directly involved in preparing this document.

48. In addition, as set forth in the Proxy Statement at length and described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Merger

Agreement. The Proxy Statement purports to describe the various issues and information that the Individual Defendants reviewed and considered. The Individual Defendants participated in drafting and/or gave their input on the content of those descriptions.

49. By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

50. As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9 by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these Defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Individual Defendants' conduct, Plaintiff will be irreparably harmed.

51. Plaintiff has no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff prays for judgment and relief as follows:

A. Preliminarily and permanently enjoining Defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction;

B. Directing the Individual Defendants to disseminate an Amendment to the Proxy Statement that does not contain any untrue statements of material fact and that states all material facts required in it or necessary to make the statements contained therein not misleading;

C. Directing Defendants to account to Plaintiff for all damages sustained because of the wrongs complained of herein;

D. Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

E. Granting such other and further relief as this Court may deem just and proper.

**JURY DEMAND**

Plaintiff demands a trial by jury on all issues so triable.

Dated: February 21, 2022

Respectfully submitted,

By: _/s/ Joshua M. Lifshitz_
Joshua M. Lifshitz
Email: jml@jlclasslaw.com
**LIFSHITZ LAW PLLC**
1190 Broadway,
Hewlett, New York 11557
Telephone: (516) 493-9780
Facsimile: (516) 280-7376

*Attorneys for Plaintiff*